J. Stephen Werts, OSB No. 74337
E-mail address: swerts@cablehuston.com
Chad M. Stokes, OSB No. 004007
E-mail address: cstokes@cablehuston.com
R. Brent Berselli, OSB No. 092832
E-mail address: bberselli@cablehuston.com
CABLE HUSTON BENEDICT HAAGENSEN & LLOYD LLP
Suite 2000, 1001 SW Fifth Avenue
Portland, OR  97204-1136
Telephone:(503) 224-3092
Facsimile: (503) 224-3176
    Of Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| In re: | Case No. 10-30406-elp11 |
|---|---|
| Remington Ranch, LLC | **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS** |
| Debtor. | |

Remington Ranch, LLC, the debtor and debtor-in-possession in this Chapter 11 case (the "Debtor") hereby files this response (the "Response") to the Motion to Dismiss (the "Motion") filed by Hooker Creek Companies, LLC ("Hooker Creek") on March 16, 2011.

## I.  INTRODUCTION

Consideration of any motion to dismiss or convert this case to Chapter 7 is premature. Either are alternatives to be considered, if ever, only if Debtor's motion to sell its sole asset – the real property located in Powell Butte, Oregon (the "Property") – in a public auction (the "Auction") is not granted. On February 25, 2011, Debtor voluntarily withdrew its Fourth

Page  1 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS**

Amended Plan of Reorganization ("Fourth Amended Plan") in order to propose the Auction as a procedure to sell the Property which would generate more money for its creditors.

On March 28, 2011, as ordered by this Court, Debtor filed a Motion for an Order (A) Approving Bid Procedures, (B) Approving Forms of Real Property Purchase Agreement, Sale Notice, and Sale Order, (C) Approving Sale of Property Free and Clear of Liens, Claims, and Encumbrances, and (D) Scheduling a Sale Hearing to Consider Final Approval of Sale (the "363 Motion").

A hearing on Debtor's 363 Motion is scheduled for May 11, 2011, which is less than three weeks away. If Debtor fails to convince the Court that it is in the best interest of <u>all</u> of its creditors to sell the Property at an auction supervised by the Court, then the issue of whether this case should be dismissed or converted may be revisited. However, Hooker Creek's Motion is premature, and because Hooker Creek cannot currently meet its burden of proof to demonstrate "cause" for dismissal or conversion pursuant to Section 1112(b) of the Code, the Motion must be denied.

## II. BACKGROUND

*A. Jurisdiction and Venue*

1. On January 21, 2010 (the "Petition Date"), Debtor filed a voluntary petition (the "Petition") under the Bankruptcy Code.

2. Debtor is a commercial and residential property developer operating in Central Oregon. Debtor's Property consists of approximately 2,080 acres of real property located in Powell Butte, Oregon, together with all improvements thereon.

3. Debtor is an Oregon limited liability company, which was formed in 2005 for the specific purpose of developing the Property by constructing recreational facilities, including one or more golf courses and a resort community, and including homes and overnight residences.

4. Debtor's acquisition of the Property was financed, in part, with a loan from Columbia River Bank, which was subsequently acquired by Columbia State Bank. Columbia State Bank is

Debtor's largest secured creditor and holds a lien against the entire Property in the principal amount of approximately $8 million.[1] Columbia State Bank has not moved to dismiss or convert this Chapter 11 case.

5. Debtor is in possession of the Property and is continuing to manage the Property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

### *B. Post-Petition Developments*

7. By Court order, Debtor was required to file its Plan of Reorganization ("Plan") and Disclosure Statement on or before May 21, 2010. Debtor complied with this deadline and properly filed its Plan and Disclosure Statement on May 21, 2010. Debtor subsequently filed a First Amended Plan of Reorganization on July 14, 2010, a Second Amended Plan of Reorganization on July 30, 2010, a Third Amended Plan of Reorganization on August 26, 2010, and a Fourth Amended Plan of Reorganization on October 27, 2010. For purposes of this Response, the term "Plan" is intended to reference all Plans of Reorganization filed by Debtor.

8. On March 17, 2010, Debtor initiated an adversary proceeding against Hooker Creek, Debtor's second largest creditor, to challenge the validity of Hooker Creek's improperly filed claim of construction lien, which purported to encumber the entire Property. The construction lien was subsequently declared invalid by this Court. Hooker Creek has appealed that decision to the United States District Court for the District of Oregon (the "District Court"). The status of Hooker Creek's construction lien remains in dispute, and, at present, Hooker Creek holds a second trust deed encumbering part of the Remainder Piece and a third trust deed encumbering another part of the Remainder Piece.

---

[1] Debtor's Plan and Disclosure Statement contemplate completing the development of Phase I of the Property and reference a "Remainder Piece," which is not scheduled to be completed in Phase I. Columbia State Bank's lien extends to Phase I and the Remainder Piece.

Page  3 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS**

9. Hooker Creek has caused significant delay in this Chapter 11 case by filing multiple, needless objections to Debtor's Disclosure Statement. A Confirmation Hearing cannot be set, nor can Debtor begin the process of distributing the Plan and Disclosure Statement to creditors or soliciting votes thereon, until a Disclosure Statement is approved. A timeline of Debtor's Disclosure Statement filings and Hooker Creek's objections is as follows:

  a. Debtor filed its Disclosure Statement on May 21, 2010.
  b. On July 1, 2010, Hooker Creek filed its objection to Debtor's Disclosure Statement.
  c. Debtor filed its First Amended Disclosure Statement on July 14, 2010.
  d. On July 15, 2010, Hooker Creek filed its objection to Debtor's First Amended Disclosure Statement.
  e. Debtor filed its Second Amended Disclosure Statement on July 30, 2010.
  f. On August 3, 2010, Hooker Creek filed its objection to Debtor's Second Amended Disclosure Statement.
  g. Debtor filed its Third Amended Disclosure Statement on August 26, 2010.
  h. On September 2, 2010, Hooker Creek filed its objection to Debtor's Third Amended Disclosure Statement.
  i. Debtor filed its Fourth Amended Disclosure Statement on October 27, 2010.
  j. On November 16, 2010, the Court approved Debtor's Fourth Amended Disclosure Statement.

10. Several creditors objected to Debtor's original Disclosure Statement filed on May 21, 2010. However, Hooker Creek is the only creditor that objected to the First Amended, Second Amended, and Third Amended Disclosure Statements.

11. Approximately five months were spent addressing Hooker Creek's repeated objections to the Disclosure Statements. Accordingly, Hooker Creek is largely responsible for delaying this proceeding.

12. The Court issued an order approving Debtor's Fourth Amended Disclosure Statement on November 16, 2010. As part of this order, the Court set the Confirmation Hearing for March 7th through March 11th of 2011.

13. Pursuant to Debtor's request, on February 25, 2011, the Court held a status conference, at which time Debtor withdrew its Fourth Amended Plan and indicated its intent to file the 363 Motion. The Court established March 28, 2011 as the deadline for Debtor to file the 363 Motion.

14. Debtor timely filed the 363 Motion on March 28, 2011, and a hearing is scheduled for May 11, 2011.

### III. ARGUMENT

Hooker Creek has moved to dismiss this action pursuant to Section 1112(b). Hooker Creek cites *In re Woodbrook Associates* for the proposition that a "bankruptcy court has broad discretion under 11 U.S.C. § 1112(b) to dismiss a Chapter 11 case for cause." 19 F.3d 312, 316 (7th Cir. 1994). This is a correct statement of the law prior to the 2005 amendments to the Code. However, this is not currently the law. Section 1112(b) was amended as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Section 1112(b)(1) now provides:

> "Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *if the movant establishes cause*."

11 U.S.C. § 1112(b)(1) (Emphasis added). Under current law, only if the moving party has demonstrated cause does the Court have broad discretion to determine whether conversion *or* dismissal is in the best interests of the creditors. *See, e.g., In re Products Intern, Co.,* 395 B.R. 101, 108 (D. Arizona. 2008) ("…prior to the enactment of BAPCPA, [courts] had discretion in determining whether to dismiss or convert a case if cause had been shown. Now Section 1112(b), as amended, provides that once cause has been shown, the Court's discretion is limited.").

Hooker Creek's Motion should be denied because Hooker Creek cannot demonstrate cause, such as would warrant dismissal or conversion to a Chapter 7 without an evidentiary hearing.

### A. *Hooker Creek Has Not Met the Required Burden of Proof*

The case law interpreting Section 1112(b) is clear that the moving party has the burden of proving that "cause" exists for conversion or dismissal by a preponderance of the evidence. *In re Woodbrook Associates,* 19 F.3d at 317 ("Where a motion to dismiss for cause is opposed, the movant bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of the debtor's bankruptcy case.").

As discussed below, Hooker Creek has failed to satisfy its burden to prove the existence of cause for dismissal or conversion of the case, and the Motion should be denied.

### B. *What Constitutes Cause for Dismissal or Conversion Under Section 1112(b)?*

Section 1112(b)(4) provides a list of sixteen non-inclusive factors which provide "cause" for dismissal or conversion of a Chapter 11 case. Of the Section 1112(b)(4) factors, Hooker Creek relies on Section 1112(b)(4)(J) for the proposition that cause exists for dismissal because Debtor has not yet confirmed a plan and Section 1112(b)(4)(M) for the proposition that cause exists for dismissal because Debtor is unable to effectuate substantial consummation of a confirmed plan. For the reasons stated below, Hooker Creek's arguments are without merit.

1. ***Section 1112(b)(4)(J)***

Section 1112(b)(4)(J) states that cause for conversion or dismissal includes Debtor's "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court." 11 U.S.C. § 1112(b)(4)(J). Hooker Creek argues as follows:

> Debtor [acknowledged at the February 25, 2011 status conference] that it would not be able to finance a plan currently. Debtor therefore withdrew the Fourth Amended Plan two weeks before the scheduled confirmation hearing, and is not proposing an alternative plan of reorganization. Debtor's admissions and its withdrawal of the plan after over a year in bankruptcy amount to a failure to confirm a plan under Section 1112(b)(4)(J), and dismissal is warranted.

Motion, p. 2.

Hooker Creek's analysis is simply incorrect. Contrary to Hooker Creek's assertions, Debtor's 363 Motion proposes to sell the Property at an Auction supervised by the Court and, absent an agreement among creditors, contemplates that the Court will impress the net proceeds from the Auction with the existing liens and the Debtor will propose a liquidation plan to distribute proceeds after the claims allowance process.

Hooker Creek also ignores the fact that the time that Debtor has been in Chapter 11 is due, in large part, to Hooker Creek's litigation tactics. Approximately five months were wasted addressing Hooker Creek's numerous and repetitive objections to the Disclosure Statement. As a result, Debtor's Fourth Amended Disclosure Statement was not approved by the Court until November 16, 2010. It is not the Debtor that has prolonged this Chapter 11 case.

In addition, Hooker Creek fails to cite any case to support its argument that Debtor's year-long presence in Chapter 11 constitutes cause for dismissal under Section 1112(b)(4)(J). Hooker Creek's argument is unsupported by the plain language of Section 1112(b)(4)(J) or the surrounding case law. The fact that Debtor has been in Chapter 11 for slightly more than a year does not, in and of itself, constitute cause for dismissal for failure to confirm a plan. Cause exists only where the debtor has failed to comply with deadlines, whether prescribed by the Code or Court, for filing a plan of reorganization and disclosure statement or obtaining confirmation

Page 7 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS**

1  thereon. Specifically, "only *mandatory deadlines set by the Code or by an order of the court*

2  provide the basis for invoking Section 1112(b)(4)(J) as a cause for *dismissal*." 7 COLLIER ON

3  BANKRUPTCY ¶1112.04[6][J] (Emphasis added). Cause for dismissal under Section

4  1112(b)(4)(J) exists, therefore, only if Debtor has failed to comply with mandatory deadlines for

5  filing its Plan and Disclosure Statement or achieving confirmation of a plan.

6       Hooker Creek argues that dismissal of Debtor's case is appropriate, and yet, Hooker

7  Creek fails to cite any mandatory deadlines (or any non-mandatory deadlines) that Debtor has

8  not met. Indeed, Hooker Creek cannot do so. Debtor timely filed its Plan and Disclosure

9  Statement, including all amendments to each. The Court has not established a deadline by which

10  Debtor must confirm a plan, nor is any such deadline in the Code. Debtor's act of withdrawing

11  its Fourth Amended Plan in advance of the Confirmation Hearing cannot be labeled a failure to

12  confirm a plan.

13       *2. Section 1112(b)(4)(M).*

14       Hooker Creek also argues that this case should be dismissed, pursuant to Section

15  1112(b)(4)(M), because Debtor is unable to effectuate a confirmed plan. This section of the Code

16  is inapplicable because no plan has been confirmed. It is not possible for Hooker Creek to make

17  any viable argument under the facts of this case that Debtor has been unable to effectuate

18  substantial consummation of a <u>confirmed</u> plan.

19       It cannot be disputed that there is no reason to dismiss or convert this case now based on

20  Section 1112(b)(4)(M). This argument may, in fact, be completely frivolous. "Substantial

21  consummation" as defined in Section 1101(2) requires satisfaction of the following three

22  requirements:

23      (a) Transfer of all or substantially all of the property proposed by the plan to be

24          transferred;

25

26

Page 8 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S
          MOTION TO DISMISS**

    (b) Assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

    (c) Commencement of distribution under the plan.

11 U.S.C. §1101(2).

To support its argument that Debtor is unable to effectuate substantial confirmation of a plan, Hooker Creek cites *In re 499 W. Warren Street Associates, Ltd. Partnership,* 151 B.R. 307 (1992). Hooker Creek misunderstands the Court's holding, which has no bearing on whether a moving party has demonstrated cause sufficient to require conversion or dismissal under Section 1112(b)(4)(M). The *Warren Street* Court does not consider dismissal on that ground.

The *Warren Street* Court did order dismissal of a Chapter 11 case; however, the Court did not rely on, or even discuss, Section 1112(b)(4)(M). The Court determined that the debtor's plan was patently unconfirmable where the debtor impermissibly classified the unsecured deficiency claims of two undersecured creditors in separate classes in an attempt to gerrymander the confirmation process. According to the Court, once these claims were properly classified in a single class, the debtor would be unable to confirm a plan under the Code's cramdown provisions. As such, the Court stated that it "must conclude that Debtor is unable to gain acceptance of its Plan by an impaired class of claims. As a result, Debtor's Plan is unconfirmable, and Debtor therefore has no prospect for an effective reorganization…" *Id.* at 314.

*Warren Street* is distinguishable from Debtor's situation. Debtor's Plan, which was voluntarily withdrawn, was never faced with an objection for improper classification. More to the point, Debtor does not currently have a Plan before this Court, and withdrawing the Fourth Amended Plan cannot be equated with the failure to achieve substantial consummation of a confirmed plan. Rather, Debtor has satisfied the Court's deadline to file the 363 Motion, and Debtor anticipates that the net proceeds of the Auction – if Debtor's 363 Motion is granted – will

1 necessarily be distributed to creditors pursuant to a liquidation plan, which will be filed after the
2 Auction. It is simply not possible at this juncture to determine whether Debtor will be unable to
3 effectuate substantial consummation of a plan.

4     *C. Debtor's Filing Was Not in Bad Faith*

5     Hooker Creek's final allegation of cause for dismissal is that the Petition was filed in bad
6 faith. To determine whether a Chapter 11 plan has been filed in good faith, courts consider
7 whether: (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize;
8 (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to
9 sustain a plan of reorganization or to make adequate protection payments; and (5) the case is
10 essentially a two-party dispute capable of prompt adjudication in state court. *In re St. Paul Self*
11 *Storage Ltd. Partnership,* 185 B.R. 580, 582-83 (9th Cir. BAP 1995).

12     Ultimately, the determination of whether a Chapter 11 petition has been filed in good
13 faith is based on the totality of the circumstances. *In re Marshall,* 403 B.R. 668, 690 (C.D. Cal.
14 2009), *citing In re Sylmar Plaza, L.P.,* 314 F.3d 1070, 1074 (9th Cir. 2002). Further, the Ninth
15 Circuit has held that "good faith is lacking *only* when the debtor's actions are a *clear abuse of the*
16 *bankruptcy process.*" *In re Arnold,* 806 F.2d 937, 939 (9th Cir. 1986) (Emphasis added).

17     Hooker Creek contends that Debtor has filed its Chapter 11 case in bad faith because:

18     (a)     Debtor has one asset, the Property;
19     (b)     Debtor has no employees except for a property caretaker and bookkeeper;
20     (c)     There is little or no cash flow;
21     (d)     There are no available sources of income to sustain a plan of reorganization; and
22     (e)     The Petition was filed on the "eve of a foreclosure sale." Motion, p. 3.

23     While it is true that the Petition was filed after foreclosure proceedings were initiated,
24 this, alone is insufficient to support a finding of bad faith. A pending foreclosure is a common
25 reason for a borrower, whose primary asset is real property, to file a Chapter 11 case. However,
26 the foreclosure action in this case was not the singular reason Debtor filed its Petition. The more

Page 10 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S
                  MOTION TO DISMISS**

pressing reason was the assertion by Hooker Creek of an invalid construction lien. In addition, the fact that a debtor files a Chapter 11 petition to avert a foreclosure or void an invalid lien does not, by itself, establish an absence of an intent for rehabilitation, such as will permit dismissal for bad faith. *In re Marshall,* 403 B.R. at 690.

Further, Hooker Creek's analysis ignores Debtor's 363 Motion. The Auction is intended to provide the funds necessary to pay more than a single creditor. Hooker Creek's attempt to portray this case as a dispute among secured creditors is equally misguided. Debtor has numerous secured and unsecured creditors, including some creditors who are asserting security interests that may not be valid. Both Debtor's creditors and the estate will benefit from this case remaining in Chapter 11 where all priority issues can be adjudicated in the bankruptcy court.

### D. If the Court Determines Hooker Creek Has Established "Cause," Conversion, rather than Dismissal is Appropriate.

Debtor maintains that Hooker Creek has failed to satisfy its burden of proof on the issue of "cause." If, however, this Court is inclined to find cause, conversion, rather than dismissal, is in the best interests of all the creditors and the estate.

If a moving party has demonstrated cause, the court must then determine whether conversion and dismissal is in the "best interests of the creditors and the estate." *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir. 1994). Courts have great discretion in determining whether conversion or dismissal is appropriate, and in deciding between the two alternatives, the Court must consider what is in the best interests of <u>all</u> the creditors, not solely the moving party. *Id.*

Hooker Creek seeks dismissal because it believes that such a course of action is in *its* best interest. However, the majority of Debtor's creditors are best served by this case remaining in bankruptcy, which will provide the only means whereby unsecured creditors could hope to receive any distribution.

Page 11 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS**

## IV. CONCLUSION

In light of the foregoing, Debtor respectfully requests that the Court deny Hooker Creek's Motion.

DATED this 21st day of April, 2011.

Respectfully submitted,

By: /s/ J. Stephen Werts
J. Stephen Werts, OSB No. 743378
Chad M. Stokes, OSB No. 004007
R. Brent Berselli, OSB No. 092832
Attorneys for Debtor

Page  12 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS**

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **RESPONSE TO HOOKER CREEK COMPANIES LLC'S MOTION TO DISMISS** on:

Ronald T. Adams – rta@bhlaw.com, tl@bhlaw.com;
Christopher R. Ambrose - crambrose@ambroselaw.com,
Kenneth P. Childs – kpchilds@stoel.com
Timothy J. Conway – tim.conway@tonkon.com, nancy.kennedy@tonkon.com
Michael W. Fletcher – Michael.fletcher@tonnkon.com
Martin E. Hansen – meh@francishansen.com
Howard M. Levine – hlevine@sussmanshank.com
Shannon R. Martinez – smartinez@sglaw.com, epaetsch@sglaw.com
Michael H. McGean – mike@francishansen.com
Greg A. Pfister – pfistor@att.net
US Trustee, Portland, USTPRegion18.PL.ECF@usdoj.gov
John Weil for creditor General Electric Capital Corp. – bmail@hooplaw.com

[X]  by the US Bankruptcy Court's ECF noticing system, a full, true and correct copy thereof to the party, at the e-mail address shown above, on the date set forth below.

   *AND BY:*

[X]  by **MAILING** a full, true and correct copy thereof in a sealed, postage-paid envelope, addressed as shown below and deposited with the U.S. Postal Service at Portland, Oregon, on the date set forth below:

| | |
|---|---|
| Brian Depolo<br>Hart Howerton Ltd<br>One Union St. #3<br>San Francisco, CA  94111 | Destination Resort Group<br>c/o Glenn M. Kotara<br>56875 Nest Pine Dr.<br>Bend, OR  97707 |
| Jack L. Meligan<br>1800 Blankenship Rd. #160<br>West Linn, OR  97068 | Wilbur-Ellis Company<br>1101 N., Argonne Rd., #213<br>Spokane Valley, WA  99212-2699 |

DATED April 21, 2011.

/s/ J. Stephen Werts
J. STEPHEN WERTS, OSB No. 743378
Of Attorneys for Debtor

Page  13 – **DEBTOR'S RESPONSE TO HOOKER CREEK COMPANIES, LLC'S MOTION TO DISMISS**